1026299

CONV ☐  FHA ☒  VA ☐

## MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND DISCLOSURE STATEMENT

| ASSIGNEE: Vanderbilt Mortgage and Finance, Inc. | Post Office Box 9800 | Maryville, TN 37802 |
|---|---|---|

Buyer's Name: LARRY JOSEPH BROWN        Co-Signer's Name:
Buyer's Name: ROSANNA NICOLE BROWN      Co-Signer's Name:
Buyer's Address: 422 P.O. BOX  MALLORY WV 25634

In this Retail Installment Contract ("Contract"), "Buyer" refers to all persons who sign this Contract as "Buyer," jointly and severally. "Seller" refers to the seller identified at the end of this Contract, and its successors and assigns. Other capitalized terms are defined in the disclosures on this page and in the section of this Contract titled, "Itemization of Amount Financed." Buyer promises to advise Seller in writing of any change of Buyer's mailing address while this Contract is in effect. Seller should send any papers or notices concerning this Contract to Buyer's mailing address. On the date of this Contract, Buyer had the option to buy the manufactured home described below, together with the related services, furnishings, equipment, appliances and accessories included with the manufactured home (collectively called "Manufactured Home") in cash or by paying in installments. Buyer chose to buy the Manufactured Home on a credit sale basis.

### Description of Manufactured Home    NEW ☒  USED ☐

| TRADE NAME: | CMH | ADDITIONAL ACCESSORIES AND FURNISHINGS: ITEM AND SERIAL # | |
|---|---|---|---|
| YEAR: | | A/C DSA 100602349 | |
| MODEL: | RIVER RUN | | |
| SERIAL NO: | CLH035256TNAB | | |
| SERIAL NO: | | | |

**PROMISE TO PAY:** Buyer promises to pay Seller the "Unpaid Balance" as listed under the "Itemization of Amount Financed" plus finance charges. When Buyer signs this Contract, Buyer will also pay Seller any "Prepaid Finance Charge" shown in the "Itemization of Amount Financed." Buyer authorizes Seller to include the Prepaid Finance Charges in the Unpaid Balance. Seller will compute and charge finance charges on the unpaid amount of the Unpaid Balance from the Contract date at the yearly rate of <u>8.25%</u> (the "Contract Rate"). When Seller calculates finance charges, every year shall have 360 days and every month shall have 30 days. Buyer promises to pay finance charges at the Contract Rate on the unpaid amount of the Unpaid Balance of this Contract until it is paid in full. Finance charges after the final scheduled maturity date on this Contract, however, shall not exceed the maximum rate allowed by state law.

Buyer promises to pay Seller monthly payments in the number and amounts of payments shown in Buyer's Payment Schedule. Buyer's first payment will be due on the first date shown in Buyer's Payment Schedule, and subsequent payments will be due on the same day of each month after that.

Seller will apply each payment received as of its scheduled due date. If on the final scheduled payment due date, Buyer still owes amounts under this Contract, Buyer will pay those amounts in full on that date (the "Maturity Date"). Buyer will make all payments to Vanderbilt Mortgage and Finance, Inc., P.O. Box 9800, Maryville, Tennessee 37802, or any other address to which Seller later tells Buyer (in writing) to send Buyer's payments.



TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of Buyer's credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost Buyer: | Amount Financed The amount of credit provided to Buyer or on Buyer's behalf: | Total of Payments The amount Buyer will have paid after Buyer has made all payments as scheduled: | Total Sale Price The total cost of Buyer's purchase on credit including Buyer's down payment of |
|---|---|---|---|---|
| 9.71% | $65,826.06 | $52,959.66 | $118,785.72 | $5,500.00 $124,285.72 |

Buyer's Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly, Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly, Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly, Beginning: |
|---|---|---|---|---|---|---|---|---|
| 12 | $510.89 | 05/01/2011 | 12 | $496.74 | 05/01/2021 | | | |
| 12 | $509.94 | 05/01/2012 | 12 | $494.58 | 05/01/2022 | | | |
| 12 | $508.91 | 05/01/2013 | 12 | $492.23 | 05/01/2023 | | | |
| 12 | $507.79 | 05/01/2014 | 12 | $489.68 | 05/01/2024 | | | |
| 12 | $506.57 | 05/01/2015 | 12 | $486.91 | 05/01/2025 | | | |
| 12 | $505.25 | 05/01/2016 | 12 | $483.90 | 05/01/2026 | | | |
| 12 | $503.82 | 05/01/2017 | 12 | $480.64 | 05/01/2027 | | | |
| 12 | $502.26 | 05/01/2018 | 12 | $477.09 | 05/01/2028 | | | |
| 12 | $500.57 | 05/01/2019 | 12 | $473.24 | 05/01/2029 | | | |
| 12 | $498.73 | 05/01/2020 | 12 | $469.07 | 05/01/2030 | | | |

Security: Buyer gives Seller a security interest in:

[X] The goods or property being purchased, including the Manufactured Home.

[ ] Real property located at:

Late Charge: If a payment is more than 15 days late, Buyer will be charged 4% of the unpaid amount of such payment or $15.00, whichever is less. Other references in this Contract to the "Late Charge" refer to this amount.

Prepayment: If Buyer pays off early, Buyer will not have to pay a penalty.

Assumption: Someone buying the Manufactured Home may be allowed to assume the remainder of Buyer's obligations under this Contract on the original terms only if such person is approved by Sellers.

Other Information: Refer to the rest of this Contract for additional information about nonpayment, default, any required payment in full before the scheduled date and prepayment refunds and penalties.

**INSURANCE:**

PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS CONTRACT. BUYER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT WHO IS REASONABLY ACCEPTABLE TO SELLER. By checking the appropriate box and signing below, Buyer elects to buy through Seller, property insurance of the specified coverage, term and premium.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☐ N/A | N/A | N/A |
| ☐ N/A | N/A | N/A |

Buyer's signature indicates Buyer's election to obtain the above marked property insurance for the type, term, and premium shown.

Signature _____ Date _____

Signature _____ Date _____

**OPTIONAL HOME BUYER PROTECTION PLAN (HBPP):** Buyer protection plans are <u>voluntary</u> and are <u>not</u> required to obtain credit. If the box below is checked and signed, Buyer has elected to purchase HBPP for the terms shown below.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☐ N/A | N/A | N/A |

Buyer's signature indicates Buyer's election to obtain the above marked buyer protection plan for the term and premium shown.

Signature _____ Date _____

Signature _____ Date _____

**SERVICE PLAN:**

**OPTIONAL HOME PROTECTION PLAN (HPP):** Service plans are <u>voluntary</u> and are <u>not</u> required to obtain credit. If the box below is checked and signed, Buyer has elected to purchase HPP for the terms shown below.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☐ N/A | N/A | N/A |

Buyer's signature indicates Buyer's election to obtain the above marked service plan for the term and cost shown.

Signature _____ Date _____

Signature _____ Date _____

ITEMIZATION OF AMOUNT FINANCED:

1. Cash Price
    a. Manufactured Home Including Sales Tax of   $1,697.00                                                           $57,597.00
    b.
    c. Total Cash Price                                                                                                          $57,597.00

2. Downpayment
    a. Cash Downpayment                                                                                              $5,500.00
        Trade-in (Year, Make, Model)   N/A   N/A
        Length     N/A                Width    N/A
        Trade Allowance N/A          Liens     N/A
    b. Net Trade-In Allowance                                                                      $.00
    c. Total Downpayment                                                                             $5,500.00
    d.

3. Unpaid Balance of Cash Price (1c minus 2c and 2d)                         $52,097.00

4. Amounts paid to others on Buyer's behalf
    (1) To Insurance Companies
        (a) Property Insurance                                                               $852.66 **
        (b)                                                                                                         $.00 **
    (2) To Public Officials
        (a) Certificate of Title                                                                  $10.00
        (b) Filing/Recording Fees                                                            $.00
    (3) To                                                                                                                           $.00 **
    (4) To                                                                                                                           $.00 **
    (5) To                                                                                                                           $.00 **
    (6) To                                                                                                                           $.00 **
    (7) To                                                                                                                           $.00 **
    (8) To                                                                                                                           $.00 **
    (9) To                                                                                                                           $.00 **
    (10) To                                                                                                                   $.00 **
    (11) To                                                                                                                   $.00 **
    (12) To                                                                                                                   $.00 **
    (13) To                                                                                                                   $.00 **
    (14) To                                                                                                                   $.00 **
    Total (items (1) through (14))                                                                             $862.66

5. Prepaid Finance Charges (may include items paid to third parties; items may be financed in part and paid in cash in part)
    (1) Financed
        (a)      ORIGINATION FEE                                                        $529.60 **
        (b)                                                                                                        $.00 **
        (c)                                                                                                        $.00 **
        (d)                                                                                                        $.00 **
        (e)      INSPECTION FEE                                                                   $75.00 **
        (f)      UPFRONT FHA PREMIUM                                                     $1,205.20 **
    (2) Paid in cash
        (a)                                                                                                        $.00 **
        (b)                                                                                                        $.00 **
        (c)                                                                                                        $.00 **
        (d)                                                                                                        $.00 **
        (e)                                                                                                        $.00 **
        (f)                                                                                                        $.00 **

6. Unpaid Balance (3 plus 4 plus total of items in 5(1))                        $54,769.46
7. Prepaid Finance Charges (total of all items in 5)                             $1,809.80
8. Amount Financed (6 minus 7)                                                     $52,959.66

**Seller may retain, or receive, a portion of these amounts

Security interest fees paid in cash (including filing fees and taxes)                       $.00

Security interest termination, release, discharge or satisfaction fees paid upon termination: $10.00      (e). This fee is not being paid by Buyer at closing, and is estimated for disclosure purposes. The actual amount paid at the time of termination of the security interest may be more or less than the estimate depending on the amount charged by the public official.
"e" means estimate

**SECURITY INTEREST:** To secure payment of sums due or which become due under this Contract and Buyer's performance of all other terms of the Contract, Buyer grants Seller a first priority security interest in (1) the Manufactured Home, and all accessions, attachments, accessories, replacements and additions to the Manufactured Home, whether added now or later, (2) the "Property" described in any mortgage or deed of trust Buyer gives to Seller, (3) Buyer's rights to refunds of premiums for and payments under, and proceeds of any insurance or any extended warranty or service contract purchased with the proceeds of this Contract, (4) any amounts held in escrow by Seller for Buyer, and (5) proceeds and products of all of the foregoing (collectively, the "Collateral"). Seller's security interest shall remain in effect until Buyer pays, in full, all amounts due under the Contract. Despite any other provision of the Contract, however, Seller is not granted, and does not have, a nonpurchase money security interest in household goods, to the extent such a security interest is prohibited by applicable law. Buyer will pay any filing or recording fees necessary for Seller to obtain and hold a first priority security interest. To the extent allowed by law, Buyer also agrees to pay any release, discharge or termination fees, after the Buyer pays the Contract in full. Buyer agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Seller's security interest in the Manufactured Home. Buyer authorizes Seller to sign Buyer's name to any financing statement or application or other document, necessary to perfect the security interest granted by Buyer herein. If Seller is taking a security interest in real property, such interest is reflected in a mortgage or deed of trust signed in conjunction with this Contract.

**BUYER'S RIGHT TO PREPAY: BUYER MAY PREPAY ANY AMOUNTS DUE UNDER THIS CONTRACT AT ANY TIME WITHOUT PENALTY.** A Principal only payment is known as a "Prepayment." Seller will not treat a payment as a Prepayment unless the Buyer previously made all monthly payments of principal and finance charges and fully paid and satisfied all other obligations due under this Contract. If the Buyer meets these conditions, Buyer may make a Prepayment by sending such Prepayment in accordance with the written instructions provided by Seller in a monthly billing statement or otherwise. Buyer may make a full Prepayment or partial Prepayments without paying a Prepayment charge. If Buyer (1) prepays this Contract in full, or (2) defaults and fails to cure the default and Seller demands payment of the entire balance due on this Contract, no portion of any Prepaid Finance Charge will be refunded. All Prepaid Finance Charges are earned at the time this Contract is made.

**ASSUMPTION:** Someone buying the Manufactured Home may assume the remainder of Buyer's obligations under this Contract on the original terms only if such person is approved by Seller.

**PROPERTY INSURANCE:** Buyer is required to insure the Manufactured Home against physical damage, including loss by fire, hazards included within the term "extended coverage," and any other hazards for which Seller requires insurance, for the term of the Contract at Buyer's expense. If Buyer financed the premium, the premium is financed over the term of the Contract, even though the term of insurance is less than the Contract term. The Buyer must obtain the types and amounts of insurance coverage required by Seller, including flood insurance if applicable. The insurance policy must contain a loss payable clause protecting Seller (as Seller's interest may appear), and provide for at least a 10 day notice of cancellation to Seller. Buyer agrees to provide written proof of such coverage to Seller within 5 days of Seller's request. <u>BUYER HAS THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE PROPERTY INSURANCE IS OBTAINED.</u> Seller reserves the right to refuse to accept, for reasonable cause, an insurer chosen by the Buyer. If Buyer's insurance coverage expires or is canceled prior to payment in full of this Contract, Buyer must obtain coverage in the amounts, types, and for the periods that Seller requires at Buyer's expense for the remaining term of the Contract. Seller's property insurance coverage requirements can change during the term of the Contract. Should Buyer fail to provide or maintain property insurance or fail to provide Seller with satisfactory evidence of coverage, or should the property insurance, for any reason, not protect Seller's interests, Seller, in its sole discretion, may obtain property insurance that meets its requirements, but is under no legal obligation to do so. Before obtaining insurance in these circumstances, Seller will, in good faith, attempt to inform Buyer in writing of the need for Buyer to obtain property insurance and/or to provide evidence thereof. If obtained by Seller, Seller will add the cost of the insurance to the amount due under the Contract. That amount will become due and payable upon demand by the Seller, in payments added to Buyer's scheduled payments, or as otherwise required by Seller. Seller may charge Buyer finance charges on such cost at the Contract Rate, unless prohibited by applicable law. The property insurance obtained by Seller may have material differences from insurance initially financed under the Contract or from insurance obtained by the Buyer initially or at any time during the term of the Contract. Such insurance may be significantly more expensive to Buyer than if Buyer obtained the insurance. Consequently, Seller makes the following disclosures to Buyer: (a) The property insurance that Seller obtains is intended solely to protect the Seller's interest hereunder, and Seller may not obtain coverages beyond those to insure loss of or damage to the Manufactured Home; in particular, such insurance may not provide coverage for personal effects, adjacent structures, medical expenses or personal liability; additionally, such coverage may not insure the Manufactured Home in an amount equal to the Unpaid Balance due under this Contract and, consequently, in the event of loss or damage, the insurance may not pay the full amount of the Unpaid Balance of the Contract; (b) If Seller obtains this insurance due to Buyer default, Buyer acknowledges and agrees that Seller has no duty to obtain insurance on behalf of Buyer which is the least expensive, or which has a competitive marketplace premium or any other particular feature; (c) Seller or its affiliates may be reimbursed for expenses and may profit from taking action to cure Buyer's default by providing and maintaining such insurance; (d) Buyer's execution of this Contract authorizes Seller to provide third parties with any information necessary to obtain insurance on the Manufactured Home and monitor the status of such insurance; and (e) Buyer may, as stated above, at any time, including after Seller obtains property insurance on Buyer's behalf, obtain insurance through an agent or insurer of Buyer's choice. Upon so doing, Buyer may provide Seller with sufficient evidence of insurance coverage, at which time, Seller will cancel the insurance coverage it obtained on Buyer's behalf, obtain any refund due on the unearned portion of the premium, and apply the refund to the Unpaid Balance of the Contract. Property insurance proceeds (whether such insurance has been obtained by Buyer or Seller) shall be applied to the restoration or repair of the Manufactured Home, if it is economically feasible and does not lessen the Seller's security interest in the Manufactured Home. If this is not the case, or if the insurer determines that the Manufactured Home represents a total loss under the coverage, Seller will apply such insurance proceeds to reduce all amounts owing under this Contract, whether or not such amounts are due and payable. Buyer authorizes Seller to (a) adjust or settle Buyer's claim for loss under such insurance; (b) sign Buyer's name to any check, draft or other documents necessary to obtain such insurance proceeds; and (c) hold such insurance proceeds until Seller has the opportunity to inspect the Manufactured Home and ensure that work to restore or repair the Manufactured Home is completed to Seller's satisfaction, without incurring an obligation to pay Buyer earnings or interest on such proceeds. Seller may disburse proceeds in a single payment or a series of payments and Buyer authorizes any insurer to make such payment directly to Seller. If insurance proceeds paid to Seller do not satisfy all amounts Buyer owes to Seller under this Contract, Buyer is responsible for paying the balance.

**ESCROW ITEMS:** To the extent permitted by ___, Seller may, at Seller's option, require Buyer to make ___ ments in addition to those set forth in Buyer's Payment Schedule ("Escrow Payments") which Seller will collect and hold for (1) the payment of property insurance premiums required under this Contract, (2) the payment of taxes and assessments, and (3) other items which might attain priority over Seller's security interest (each, an "Escrow Item"). Seller will use Buyer's Escrow Payments to pay Escrow Items as they come due. **THE BUYER'S PAYMENT SCHEDULE IN THIS CONTRACT DOES NOT INCLUDE ANY AMOUNT TO BE PAID UNDER ANY SUCH ESCROW ACCOUNT.**

**SERVICING CHARGES:** Buyer agrees to pay all reasonable charges for Seller's performance of additional services requested by Buyer in connection with the servicing of this Contract, to the extent permitted by applicable law. These charges may include, but are not limited to, amortization schedule fee, document copy fee, duplicate year end statement fee, name change fee, payoff statement fee, pay-by-phone fee or convenience fee (if Buyer elects to make a payment in a manner where such a fee is imposed, including but not limited to a wire transfer, electronic transfer, or through a web site), payment history fee, short payoff overnight fee and verification of credit fee and verification of mortgage fee.

**ADVANCES TO PROTECT THE COLLATERAL:** If Buyer fails to pay for required insurance, if Buyer fails to pay park or lot rent (and any other related charges), if Buyer fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home, if Buyer fails to keep the Manufactured Home in good repair or if Buyer fails to make any other payments required by this Contract or applicable law, Seller may (but is not required to) make such repairs or payments as Seller chooses. Seller will add any and all such payments and any amounts Seller pays to protect or enforce Seller's security interest to the amount Buyer owes Seller under this Contract, and all such amounts will be secured by the Collateral. At Seller's sole option, Seller may (1) demand that Buyer repay these amounts immediately, or (2) add these amounts to Buyer's regularly scheduled payments, or (3) add these amounts as additional installments due or (4) add these amounts to the final installment due on this Contract. Unless prohibited by law, Buyer agrees to pay finance charges at the Contract Rate on any amounts that Buyer does not repay immediately.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Buyer agrees to pay the Late Charge indicated in the "Truth in Lending Disclosures" section of this Contract. If any check, negotiable instrument of withdrawal, electronic payment draft or any other instrument is dishonored by Buyer's financial institution, Buyer will pay a fee of $20.00, in addition to being required to make payment on the item. Buyer will be in default under this Contract if: (1) Buyer fails to make any payment when due; (2) Buyer otherwise fails to perform any of Buyer's obligations under this Contract or under any mortgage or deed of trust which secures this Contract; (3) Buyer dies or becomes legally unable to manage Buyer's affairs; (4) any statement of fact, representation or warranty Buyer makes to Seller in Buyer's application for credit, any other document submitted to the Seller or signed by Buyer in connection with this Contract, or in any Contract document is false, misleading, inaccurate, or incomplete; or (5) Buyer files a petition in bankruptcy, or a party files a petition in bankruptcy against Buyer. In the event of Buyer's default, Seller will give Buyer notice of the default and right to cure the default ("Notice of Default"). Buyer is not entitled to a Notice of Default if Buyer abandons or voluntarily surrenders the Manufactured Home, or if other extreme circumstances exist. Buyer is not, under any circumstances, entitled to a Notice of Default more than three times in any one year period. If Buyer does not cure the default within 30 days after the postmarked date of the Notice of Default, or if a Notice of Default is not required to be sent, Seller may (1) accelerate the maturity of the debt and require Buyer to pay Seller the entire remaining balance and all other amounts due under the Contract, (2) require Buyer to make the Manufactured Home available to Seller, (3) take legal action against Buyer, (4) repossess the Manufactured Home, (5) enforce such rights and remedies available to Seller under the uniform commercial code and other applicable law, and (6) foreclose on the real property, if applicable. Seller, at its sole option, may elect to sever and remove the Manufactured Home from any real property where it is located, regardless of whether the real property secures this Contract. In the event of default, Buyer also agrees to pay Seller's expenses for (a) court costs and disbursements, and (b) costs of repossessing the Manufactured Home including the costs of storage, reconditioning, and resale. Before Seller sells the Manufactured Home, Buyer can get the Manufactured Home back if Buyer either (1) pays off the Contract by paying Seller the entire remaining balance and all other amounts due under the Contract (redeem), or (2) cures the default by paying Seller the amounts which are past due, including Late Charges (reinstate). Regardless of whether Buyer redeems or reinstates, and before Buyer can get the Manufactured Home back, Buyer must also (1) pay Seller the cost of taking, storing and redelivering the Manufactured Home and other expenses Seller incurs; (2) pay Seller all other charges and other expenses provided for under this Contract; (3) pay any amounts advanced by Seller to protect the Collateral, without regard to any agreement to repay such amounts advanced on a periodic basis, including but not limited to unpaid insurance premiums, park or lot rent, taxes, assessments or similar items; and (4) cure any other defaults. Buyer's rights to redeem and/or reinstate end upon sale of the Manufactured Home unless otherwise required by law. All rights and remedies under this Contract and any mortgage or deed of trust executed herewith are cumulative, but Buyer's right to a written notice of default and 30 days to cure, as set forth in this Contract, shall not be affected by any inconsistent provision of any mortgage or deed of trust. Any personal property of Buyer's located in or attached to the Manufactured Home and not subject to Seller's security interest may be held by Seller without liability except for any loss or damage caused by Seller's negligence if the Seller repossesses the Manufactured Home. Buyer will be deemed to have waived any claim to such personal property unless written demand by certified mail is made upon Seller within twenty-five (25) days after repossession. If Buyer fails to give Seller such written demand, Seller may dispose of such personal property.

**INFORMATION SHARING:** Seller may investigate Buyer's credit history and credit capacity in connection with establishing, modifying, extending, and/or enforcing Buyer's account, and share information about Buyer and Buyer's account with credit reporting agencies and others as allowed by law. Seller may also verify Buyer's employment, income, assets, and debts; and anyone receiving a copy of this Contract is hereby authorized to release such information to Seller. Buyer authorizes Seller to release to third parties any information necessary to monitor the status of insurance on Buyer's Manufactured Home, and to obtain the insurance described in this Contract. If Buyer's Manufactured Home is on rented property or property that is not owned by Buyer, Buyer authorizes Seller and Buyer's landlord (or the property owner) to exchange information as to Seller's security interest in Buyer's Manufactured Home and the lease or arrangement, as well as to the obligations, and the status of such obligations, of Buyer to Seller under this Contract. Whether or not the Buyer rents the Manufactured Home to a party in accordance with the terms of this Contract, Buyer authorizes Seller and Buyer's renter to exchange information as to Seller's security interest in Buyer's Manufactured Home and the rental agreement or arrangement, as well as to the obligations, and the status of such obligations of Buyer to Seller under this Contract. This provision also applies to any co-signor who executes this Contract.

**OTHER TERMS AND CONDITIONS:** Buyer will not move the Manufactured Home without Seller's prior written consent. Buyer will not sell the Manufactured Home without Seller's prior written consent. Buyer agrees that the Manufactured Home is, and shall remain, during the term of this Contract, personal property. Unless Seller gives prior written consent, Buyer shall not allow the Manufactured Home to become a part of real estate or to lose its status as personal property under applicable law. Buyer will not encumber or abandon the Manufactured Home, nor allow any lot lien, landlord lien, or similar lien, which may by law be superior to Seller's security interest, to encumber the Manufactured Home. Buyer will not use the Manufactured Home for illegal activity. Buyer will not use the Manufactured Home for business or hire, or rent it to another party, without obtaining Seller's prior written consent. Buyer will pay promptly all taxes, assessments, and any liens and encumbrances on the Manufactured Home. Buyer will notify Seller promptly of any loss or damage to the Manufactured Home, as well as any condemnation, confiscation or theft of the Manufactured Home. Upon Seller's request, Buyer will promptly provide Seller with proof satisfactory to Seller that: (1) Buyer has the insurance required under this Contract; (2) Buyer has paid all taxes assessed against the Manufactured Home; (3) Buyer has paid all park or lot rent (and any other related charges) due; (4) Seller holds the only lien against the Manufactured Home; (5) the Manufactured Home is in good condition and repair; and (6) Buyer has complied with all of the promises Buyer made in this Contract. Seller may inspect the Manufactured Home at any time. If Buyer is married, and residing in a community property state, both Buyer's community property and separate property are liable for all payments under this Contract. Buyer waives all marital rights, homestead exemption and other exemptions relating to the Collateral. Buyer will cooperate with Seller regarding any requests after closing to correct any errors with respect to this Contract or the transaction and agrees to provide any and all additional documentation deemed necessary by Seller to complete this transaction. Seller may rely on a telecopy, photocopy, or electronically imaged copy of this Contract as if it were an original, including use in legal proceedings or arbitrations. Buyer acknowledges that any broker or other third party used to facilitate this transaction may receive compensation from Seller for its services. If Borrower purchased a Home Buyer Protection Plan (HBPP) or Home Protection Plan (HPP), the cost is financed over the term of the Contract, even though the term of the plan is shorter than the Contract term.

**WAIVER AND MODIFICATION:** Seller's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Seller shall not be a waiver of Seller's right to accelerate the maturity of this Contract and declare default herein. To the extent permitted by law, Buyer agrees to give up Buyer's rights to require Seller to do certain things. Buyer does not give up any rights that are provided in this Contract. Unless the law or this Contract provides otherwise, Seller is not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that Seller intends to make, or is making, this Contract immediately due.

**WARRANTIES:** SELLER MAKES NO WARRANTIES ON THE MANUFACTURED HOME, AND EXPRESSLY EXCLUDES ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, UNLESS GIVEN TO BUYER BY SELLER IN WRITING AT THE TIME OF SALE, OR SELLER ENTERS INTO A WRITTEN SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT. BUYER AGREES THAT THE YEAR OF THE MANUFACTURED HOME IS FOR IDENTIFICATION PURPOSES ONLY AND MAY NOT BE THE BASIS FOR A WARRANTY OR OTHER CLAIM AGAINST SELLER. THE ABOVE DISCLAIMERS DO NOT AFFECT ANY WARRANTIES COVERING THE MANUFACTURED HOME THAT MAY BE PROVIDED BY THE MANUFACTURER, OTHER THIRD PARTIES, OR THAT ARE REQUIRED BY LAW.

**VALIDITY AND EFFECTIVENESS:** Wherever possible each provision of this Contract shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Contract is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, however, the remainder of such provision or the remaining provisions of this Contract shall not be invalidated. The Contract has been delivered in the state of Seller's place of business, as indicated below, and shall be governed both as to issues of formation and performance by the laws of that state and applicable federal law. This Contract shall have no effect until and unless signed by Buyer and Seller. Seller does not intend to charge or collect any finance charge, charge, or fee greater than the law allows. If Seller charges or collects any amount greater than what the law allows, Seller will apply the excess to the Unpaid Balance and any other amounts due under the Contract and shall refund any excess. Seller will treat any amount applied to the Unpaid Balance as a partial Prepayment.

**ASSIGNMENT:** Seller may assign this Contract to any person or entity.

**ENTIRE AGREEMENT:** This Contract, any separate written warranty, the Retailer Closing Agreement, escrow agreement, sales/purchase agreement, and any mortgage or deed of trust, together, the "Entire Agreement Documents," shall constitute the entire agreement between Buyer and Seller. To the extent permitted by applicable law, Buyer agrees that no representations, oral or written, have been made to Buyer to induce Buyer to enter into the Entire Agreement Documents, except as set forth therein.

**GUARANTY:** Any Co-Signer signing the guaranty of this Contract agrees that all amounts owed under this Contract will be paid when due. Co-Signer's obligation continues even if Buyer is released or if Seller waives or delays enforcement of any rights under this Contract. Seller need not give Co-Signer notice of any such waiver, delay or release. See Notice to Co-Signer before signing this guaranty.

THIS SPACE LEFT INTENTIONALLY BLANK.

ARBITRATION:

    A. Agreement to Arbitrate: Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to this Contract, any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this Contract, any events leading up to this Contract, the collection and servicing of this Contract, and the interpretation, scope, validity or enforceability of this Contract (with the exception of this agreement to arbitrate, the "Arbitration Agreement"). The interpretation, scope, validity or enforceability of this Arbitration Agreement or any clause or provision herein and the arbitrability of any issue shall be determined by a court of competent jurisdiction. Buyer and Seller agree that the scope of this Arbitration Agreement is intended to cover only Claims brought by Buyer on an individual basis and not on a representative basis as a class action, which includes similar actions that involve the aggregation of individual Claims of Buyer and other persons into a single proceeding. Notwithstanding any other provision of this Arbitration Agreement or any determination as to the enforceability of this Arbitration Agreement or the arbitrability of any Claims, Buyer and Seller expressly agree not to arbitrate any Claims as a class action. This Arbitration Agreement is the only agreement between Buyer and Seller regarding Arbitration, and takes the place of any other agreements to arbitrate.

    If Buyer has Claims against others (each, a "Third Party") related to or arising from facts or circumstances covered by this Arbitration Agreement (including, but not limited to (i) the design, construction and manufacture of the Manufactured Home, (ii) the advertising and the sale of the Manufactured Home, (iii) the delivery or the installation of the Manufactured Home, and (iv) insurance covering the Manufactured Home or Buyer, including title insurance, where applicable (each, a "Related Claim")), then Buyer and Seller agree to consolidate the Arbitration of Buyer's Claims against Seller, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Arbitration Agreement, *provided, however*, that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Arbitration Agreement. If any Third Party does not agree to be joined in the Arbitration of its Related Claim, then Arbitration under this Arbitration Agreement shall proceed without that Third Party. Buyer agrees not to arbitrate any Related Claims as a class action. This Arbitration Agreement also covers all co-signors and guarantors who sign this Contract and any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement). Buyer agrees that the Manufactured Home contains parts manufactured outside of the state where the home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce.

    B. Facts About Arbitration: Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An Arbitrator will decide the case by issuing a written decision called an "award." Once confirmed, an award may be enforced as a court judgment in accordance with federal or state law. The circumstances under which a court can review an award are more limited in Arbitration.

    C. Rules: The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. §§ 1_9; (b) the arbitration rules ("Arbitration Rules") of the American Arbitration Association ("AAA") (the "Arbitration Administrator") in effect at the time Arbitration is requested, at the election of the Party filing for Arbitration; and (c) this Arbitration Agreement. A copy of the Arbitration Rules may be obtained, free of charge, from the AAA, on the internet at www.adr.org, by calling 800-778-7879, or by writing to - American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019. If the terms of this Arbitration Agreement and the Arbitration Rules conflict, the terms of this Arbitration Agreement shall control to the extent of the conflict. The person who conducts the Arbitration (the "Arbitrator") shall have all powers provided by the Arbitration Rules and this Arbitration Agreement. After the Arbitrator is selected, the Arbitrator, in accordance with the Arbitration Rules, will set a reasonable schedule, in light of the nature and complexity of the Claims, for the Arbitration and discovery, including any depositions, the exchange of written documents, the final deadline for discovery prior to the Arbitration, and other discovery matters addressed in the Arbitration Rules. The Arbitration shall be conducted in the largest city in the federal judicial district where Buyer resides, or at any other place mutually acceptable to Buyer and Seller. At the election of either Buyer or Seller (and at the expense of the electing party), the Arbitration may be recorded and transcribed by a court reporter. Judgment upon the award rendered may be entered in any court having jurisdiction. The Parties agree that information exchanged in the Arbitration shall be held confidentially, and shall not be used in other arbitrations or court proceedings. All statutes of limitation that would otherwise apply to a Claim in a judicial action shall apply to the Arbitration of that Claim under this Arbitration Agreement. The Arbitrator shall apply applicable substantive law and shall honor claims of privilege recognized at law and consider defenses that a court could consider. The Arbitrator's decision shall be in writing, and shall include the Arbitrator's reasons for the award, including detailed findings of fact and conclusions of law. The Arbitrator may award the prevailing party in the Arbitration with that party's reasonable attorney's fees and any fees paid to commence the Arbitration, including the Arbitrator's fees, if such are available under applicable law. Any Claim or counter-claim (including compulsory or permissive under law) of a party must be made in the Arbitration, and the failure to bring such Claim or counterclaim shall constitute a waiver of and a bar to bringing such claim or counterclaim in an later Arbitration or action in court.

    D. Fees and Costs: The fees and costs imposed by the Arbitration Administrator associated with the Arbitration, including the Arbitrator's fees, shall be paid in accordance with the Arbitration Rules and this Arbitration Agreement. Buyer may request that the Arbitration Administrator reduce or waive Buyer's fees, or that Seller voluntarily pay an additional share of the fees and costs (however, such request does not obligate Seller to do so), based upon Buyer's financial circumstances or the nature of Buyer's Claim.

    E. Class Action Waiver: Buyer waives the right to participate as a representative or member in a class action or otherwise join Buyer's Claims with those of any other person.

F. Joinder of Arbitrations: Except as provided expressly in Paragraph A. of this Arbitration Agreement with respect to the Arbitration of Buyer's individual Related Claims, Buyer and Seller agree to give up any right to consolidate or join any individual Arbitration with the Arbitration of others.

G. Exceptions: Notwithstanding any other provision of this Arbitration Agreement, Buyer agrees that Seller may use judicial process (filing a lawsuit): (a) to enforce the security interest granted in this Contract or any related mortgage or deed of trust, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Manufactured Home or other Collateral. Buyer and Seller also agree that this Arbitration Agreement does not apply to any Claim where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides, *provided, however*, that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this paragraph G., however, shall not be a waiver of Seller's or Buyer's right to compel Arbitration of any other Claim that is covered by this Arbitration Agreement, including Buyer's counterclaim(s) in a suit brought by Seller. Buyer and Seller give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted.

H. Severability: If it is determined that any paragraph or provision in this Arbitration Agreement (other than the Class Action Waiver in paragraph E., the agreement with respect to joinder of Arbitrations in paragraph F., or the agreement of Buyer and Seller not to arbitrate class actions generally) is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Arbitration Agreement and the remainder of this Arbitration Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision or any other provision of this Contract or Arbitration Agreement, if a court of competent jurisdiction finally determines the Class Action Waiver in paragraph E., the agreement with respect to joinder of Arbitrations in paragraph F., or the agreement of Buyer and Seller not to arbitrate class actions generally, to be illegal, invalid, or unenforceable, then the Parties agree that such waiver shall not be severed and that this Arbitration Agreement shall be void in its entirety without effect on the remainder of this Contract.

I. Survival of Arbitration Agreement: This Arbitration Agreement will survive and continue in full force and effect notwithstanding rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of this Contract or any other contract or transaction between the Parties, unless otherwise agreed to in writing by the Parties. In addition, Buyer understands and acknowledges that the rights afforded to Seller under this Arbitration Agreement survive any assignment of this Contract by Seller and that Seller can enforce this Arbitration Agreement in the event a Claim arises after the assignment of this Contract.

J. Rules of Construction: If there is a disagreement on the interpretation of this Arbitration Agreement, this Arbitration Agreement shall be construed to require Arbitration, rather than to defeat it, except for class actions, which the Parties agree not to arbitrate. Buyer and Seller waive the rule of construction that requires a tribunal to construe a vague or ambiguous provision against the drafting party.

K. Jury Waiver: Buyer and Seller hereby expressly and irrevocably waive any right to a trial by judge or jury of any Claims covered by this Arbitration Agreement. This waiver will remain enforceable even if any portion of this Arbitration Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily.

L. NOTICE: BUYER UNDERSTANDS THAT THIS ARBITRATION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS CONTRACT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS ARBITRATION AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS ARBITRATION AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS CONTRACT.

TO CONTACT VANDERBILT MORTGAGE AND FINANCE, INC. ABOUT THIS ACCOUNT CALL (865) 380-3000 OR (800) 970-7250.

THIS SPACE LEFT INTENTIONALLY BLANK

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTO (BUYER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH TH PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BUYER) SHALL NOT EXCEED AMOUNTS PAID BY TH DEBTOR (BUYER) HEREUNDER.

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU AI ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 3. BY SIGNING THIS CONTRAC YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT. 4. AT ANY TIME, YOU HAVE THE RIGHT TO PAY IN ADVANCE TH UNPAID BALANCE DUE UNDER THIS CONTRACT WITHOUT PENALTY.

SELLER'S AGREEMENT AND ASSIGNMENT: Seller hereby agrees to this Contract. Additionally, Seller hereby assigns this Contract, together with Seller's rights, title and interests in the Collateral and all real property (if any) securing this Contract, to **Vanderbilt Mortgage and Finance, Inc.** (the "Assignee"), located at 500 Alcoa Trail, Maryville, Tennessee 37804. Notice of acceptance is hereby waived.

Seller: CLAYTON HOMES DANVILLE, WV

By _____ gen. mgr.
  (Signature)            (Title)

Seller's Address  ROUTE 119 NORTH
                  TURTLE CREEK, WV
                  (City)        (State)

IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFO YOU SIGN IT. THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIABLE WI THE SELLER. THE SELLER MAY ASSIGN THIS CONTRACT AND RETAIN T RIGHT TO RECEIVE A PART OF THE FINANCE CHARGE.

Executed by the parties this 18th day of March 2011
                                       (Month)    (Year)

BUYER(S):

_____
(Buyer) LARRY JOSEPH BROWN

_____
(Buyer) ROSANNA NICOLE BROWN

GUARANTY OF BUYER'S PROMISES: The undersigned, separately and togeth agree(s) to pay all amounts due on this Contract until all amounts due on t Contract are paid in full. The undersigned also agree(s) to all the terms a conditions of this Contract.

_____
(Co-Signer)

_____
(Co-Signer)

### ASSIGNMENT BY VANDERBILT MORTGAGE AND FINANCE, INC.

VANDERBILT MORTGAGE AND FINANCE, INC., having been assigned this Contract, hereby assigns to _____ _____ the foregoing Contract, including all amounts payable by Buyer and the security interest in the Collateral, without recours

Date: _____  By: _____  Title: _____

West Virginia -- Retail Installment Sales Contract-1353 - RicWV524 02/2011