UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LARRY BROWN and
ROSANNA BROWN,

      Plaintiffs,

v.                           Civil Action No. 2:13-31404

CMH MANUFACTURING, INC.
a foreign corporation, and
CMH HOMES, INC.
a foreign corporation, and
VANDERBILT MORTGAGE AND FINANCE, INC.
a foreign corporation,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is the defendants' collective motion to compel

arbitration, filed December 9, 2013.


I. Background

      On March 18, 2011, Larry Brown and Rosanna Brown (the

"Browns") purchased a manufactured home from defendant CMH

Homes, Inc. ("CMH Homes").[1]  The home was made by defendant CMH

Manufacturing, Inc. ("CMH Manufacturing").  The purchase was

financed through defendant Vanderbilt Mortgage and Finance, Inc.

---

[1] The Seller's name on both the Sales agreement and the financing agreement is "Clayton Homes Danville, WV," and signed on behalf of that entity by Lee Smell, but the parties treat the sale as having been made by CMH Homes.

1

("Vanderbilt").  Compl. ¶¶ 5, 7, 11, 14.  The Browns signed two
agreements as part of the purchase: a Sales Agreement and a
Manufactured Home Retail Installment Contract and Disclosure
Statement (the "Finance Agreement").  Defs.' Mot. Compel
Arbitration, Exs. 1-2.

The Finance Agreement provides that the Browns will
pay for the manufactured home in monthly installments over a
period of 20 years and that the Browns grant the Seller a first
priority security interest in the manufactured home, which may
be enforced upon default by repossession or judicial power or
both.  At the end of the Finance Agreement the Seller assigns
"this Contract, together with Seller's rights, title and
interests in the Collateral . . . to Vanderbilt . . . ."
Finance Agreement 10.

The Finance Agreement contains an arbitration
provision that, among other things, states:

> Buyer and Seller (sometimes called the 'Parties')
> agree to mandatory, binding arbitration ('Arbitration') of
> all disputes, claims [and] controversies . . . arising from
> or relating to this Contract, any product/goods, services,
> insurance, or real property (including improvements to the
> real property) sold or financed under this Contract, any
> events leading up to this Contract, the collection and
> servicing of this Contract, and the interpretation, scope,
> validity or enforceability of this Contract (with the
> exception of this agreement to arbitrate, the 'Arbitration
> Agreement').  The interpretation, scope, validity or
> enforceability of this Arbitration Agreement or any clause
> or provision herein and the arbitrability of any issue

shall be determined by a court of competent jurisdiction. . . .

If Buyer has Claims against others (each, a 'Third Party') related to or arising from facts or circumstances covered by this Arbitration Agreement (including, but not limited to (i) the design, construction and manufacture of the Manufactured Home, (ii) the advertising and the sale of the Manufactured Home, (iii) the delivery or the installation of the Manufactured Home, and (iv) insurance covering the Manufactured Home or Buyer, including title insurance, where applicable (each, a 'Related Claim')), then the Buyer and Seller agree to consolidate the Arbitration of Buyer's Claims against Seller, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Arbitration Agreement, *provided, however*, that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Arbitration Agreement.

. . .

The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. §§ 1_9; (b) the arbitration rules ('Arbitration Rules') of the American Arbitration Association ('AAA')(the 'Arbitration Administrator') in effect at the time Arbitration is requested, at the election of the Party filing for Arbitration; and (c) this Arbitration Agreement. . . . After the arbitrator is selected, the Arbitrator, in accordance with the Arbitration Rules, will set a reasonable schedule, in light of the nature and complexity of the Claims, for the Arbitration and discovery, including any depositions, the exchange of written documents, the final deadline for discovery prior to the Arbitration, and other discovery matters addressed in the Arbitration Rules.

Finance Agreement 8 (emphasis in original).

Although the Sales Agreement itself is silent regarding arbitration, the Finance Agreement, as above quoted, expressly covers in arbitration all disputes arising from or

relating to the Finance Agreement and any product or services sold or financed under the Finance Agreement, including claims by the Browns against the manufacturer.

After moving in, the plaintiffs eventually discovered a "Homeowner's Manual" inside a kitchen drawer of their new home.  Larry Brown Aff. ¶ 18-19.  They had not seen this manual before they purchased the home.  Id. ¶ 20.  In addition to information regarding general home maintenance, operation, safety, and moving, the manual contained a "Limited One Year Warranty and Arbitration Agreement."  Defs.' Mot. Compel Arbitration, Ex. 4, at 34.

The Browns allege that the home they received did not conform to express and implied warranties.  Compl. ¶ 2.  They do not elaborate on the problems with their home other than stating that "[t]he nonconformities discovered by the Plaintiffs involved substandard, defective and/or negligent manufacture, delivery, and installation."  Compl. ¶ 17.  The plaintiffs accepted the home assuming that some of the defects would be cured, but also were unable to discover some of the defects until after they began living in the home.  Compl. ¶ 28, 31. The Browns state that they notified CMH Homes and CMH Manufacturing about the problems and to request repairs, but that those defendants failed to sufficiently repair the home to

conform with the warranties after being given "numerous opportunities to correct the defects". Compl. ¶¶ 19, 29.  The Browns bring ten claims, all under West Virginia state law and connected to the alleged breach of warranties or the fairness of the contracts.

After removing this action from the Circuit Court of Boone County, the defendants moved to compel arbitration.  In the defendants' estimation, both the arbitration agreement in the Finance Agreement, and the arbitration provision in the Homeowner's Manual compel arbitration.  The defendants assert that claims against CMH Homes, treated as signatory to the Finance Agreement, should be arbitrated because of the arbitration clause in the Finance Agreement, and that claims against Vanderbilt and CMH Manufacturing should be arbitrated based on a theory of equitable estoppel.

In response, the Browns insist that they had no knowledge of any of the arbitration agreements, were not given copies of the Sales Agreement or Finance Agreement, and that the arbitration provisions were both procedurally and substantively unconscionable.  Although they often do not specify which arbitration provision they are discussing, they argue that the arbitration clauses are procedurally unconscionable because they allegedly limit discovery and because the arbitration agreements

designate the American Arbitration Association ("AAA"), which in their view is biased, to conduct the arbitration.  They also argue that the arbitration agreements are substantively unconscionable because, in the plaintiffs' estimation, they do not apply equally to the buyer and seller.  Additionally, the Browns respond that both arbitration clauses are not valid because the Browns did not voluntarily, knowingly, and intelligently waive their right to a jury trial.  Inasmuch as the arbitration agreement in the Finance Agreement alone suffices to resolve the question of whether arbitration is required here, the court does not further address the role of the Homeowner's Manual arbitration provision.

The court has jurisdiction over this case in diversity.  28 U.S.C. § 1332 (2012).  There is no dispute that the plaintiffs are citizens of Logan County, West Virginia, and the defendants are all citizens of Tennessee.  Compl. ¶¶ 4-8; Not. Removal ¶¶ 4-6.  The purchase price of the home was $57,597 (absent the finance charges of over $65,000) and the plaintiffs seek cancellation of the contract.[2]  When a party seeks cancellation of a contract, it is the entire price of the contract that is in controversy.  See, e.g., Mullins v. Harry's

---

[2] The complaint does not specify whether the plaintiffs seek rescission of the Finance Agreement, the Sales Agreement, or both.

Mobile Homes, Inc., 861 F. Supp. 22, 24 (S.D. W.Va. 1994).  The
plaintiffs also allege various violations of the West Virginia
Consumer Credit and Protection Act ("WVCCPA") for which monetary
relief is sought, request attorney's fees pursuant to W. Va.
Code § 46A-5-104, and seek punitive damages.  Although
valuations of these forms of relief are not yet particularized,
the court is satisfied that the amount in controversy exceeds
$75,000 after adding these three categories of relief to the
contract sale price of $57,597.  See, e.g., Woodrum v. Mapother
and Mapother P.S.C., Inc., Civ. Action No. 2:10-0478, 2010 WL
3943732, *6 (S.D. W.Va. Oct. 5, 2010) (estimating attorney's
fees in an action asserting WVCCPA claims as $25,000).  The
court thus has jurisdiction.[3]

---

[3] The defendants argue in the notice of removal that federal
question jurisdiction also exists.  See 28 U.S.C. § 1331 (2012).
Specifically, they state that this action is subject to the
Carmack Amendment of the Interstate Commerce Commission Act, 49
U.S.C. § 14706 (2006), because the plaintiffs allege damage to
the home during the delivery.  Section 14706 permits actions in
federal court against delivering carriers who damage goods and
also travel between states, among other things.  See 49 U.S.C.
§§ 13501, 14706.  Yet the plaintiffs' complaint contains no
claim under § 14706 or any other federal statute.  It is
fundamental that federal question jurisdiction may not be
premised on federal defenses, but only on federal claims in the
complaint.  See, e.g., Holmes Group, Inc. v. Vornado Air
Circulation Sys., Inc., 535 U.S. 826, 830 (2002).

7

## II. Analysis

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, espouses a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). In this circuit, under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16,

> a litigant can compel arbitration . . . if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). The Browns do not contest the defendants' claims that the first, third, and fourth elements of this test are met, and the court finds that they are established. The dispute is only over the second element, that is, whether any agreement covers the disputes between the parties and includes an arbitration provision.

Whether a party agreed to arbitrate a particular dispute is generally a question of contract formation under state law. Adkins, 303 F.3d at 501 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "Although

federal law governs the arbitrability of disputes, state-law principles resolve issues regarding the formation of contracts." American Gen. Life and Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citing Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005)).  "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  Volt Information Scis., Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 475-76 (1989).

       The court ultimately concludes that the arbitration clause in the Finance Agreement requires the court to compel arbitration with respect to all of the Browns' claims.  As a result, the court does not address the Sales Agreement or the Homeowner's Manual in further detail.  As previously noted, throughout the Browns' response, they refer to the "arbitration clause" without specifying if they are referring to the clause in the Finance Agreement or in the Homeowner's Manual.  The court will address all of the plaintiffs' arguments as if made with respect to the arbitration clause in the Finance Agreement. Further references by the court to the "Arbitration Agreement"

refer to the arbitration agreement contained within the Finance Agreement.

A.  Parties Bound to Arbitration

The defendants raise the questions of what parties are bound to arbitrate and whether the Arbitration Agreement covers the disputes at issue.  As noted, the Finance Agreement was originally between CMH Homes as "Seller" and the Browns as the "Buyers", but CMH Homes immediately assigned it to Vanderbilt. CMH Manufacturing was not a party to the Finance Agreement.  The Arbitration Agreement in the Finance Agreement states the "Buyer and Seller . . . agree to mandatory, binding arbitration of all disputes . . . including . . . contract and warranty claims . . . arising from or relating to this Contract [and] any products/goods . . . sold or financed under this contract . . . ."  Finance Agreement 8.  The Browns' complaint against the defendants concerns warranties in the manufacture and delivery of the home, and thus it is covered by the plain language of the arbitration agreement.

With respect to claims against Third Parties, the Arbitration Agreement states, as quoted at length above, that "[i]f Buyer has Claims against others (each, a 'Third Party') related to or arising from facts or circumstances covered by

this Arbitration Agreement (including, . . . the design,
construction and manufacture of the Manufactured Home . . .
[and] the delivery or the installation of the Manufactured Home
. . . (each, a 'Related Claim')) then the Buyer and Seller agree
to consolidate the Arbitration of Buyer's Claims against Seller,
with the Arbitration of any and all Related Claims . . . into
one Arbitration to be governed by this Arbitration Agreement,
*provided, however*, that the Third Party must agree to be joined
in the Arbitration of the Related Claims under this Arbitration
Agreement."  Finance Agreement 8 (emphasis in original).  By the
terms of the Arbitration Agreement, the plaintiffs agreed to
include in arbitration third parties -- for instance, CMH
Manufacturing -- against whom the plaintiff brings claims
related to the manufacture and delivery of the home.  All of the
defendants against whom the plaintiffs bring a claim -- CMH
Homes, CMH Manufacturing, and Vanderbilt -- consent to
arbitration, as they have filed a motion to compel arbitration.

Accordingly, the court finds that by the terms of the
Finance Agreement, the Browns have agreed to arbitrate all of
the disputes in their complaint.  The plaintiffs do not offer,
and the court does not find, any reason why this provision
cannot be enforced by the defendant who is a party to the
agreement.  Note that the court need not resolve whether it is

CMH Homes, the original "Seller," or CMH Homes' assignee, Vanderbilt, who has the power to enforce the Finance Agreement as a party to that agreement, because there is no question that at least one of the two has the right to do so.[4]

Consequently, the court finds that the claims against all three defendants -- CMH Homes, CMH Manufacturing, and Vanderbilt -- are covered by the language in the arbitration agreement.

B. Unconscionability

While the specific claims brought by the plaintiffs are covered by the arbitration agreement, a contract is not enforceable if it is unconscionable.  Contracts that show an "overall and gross imbalance," or appear to be exceptionally one-sided, are unconscionable.  Syl. pt. 12, <u>Brown v. Genesis Healthcare Corp.</u> (<u>Brown I</u>), 724 S.E.2d 250, 261, 228 W. Va. 646, 657 (2011), overruled in part on other grounds sub nom. <u>Marmet Health Care Ctr. v. Brown</u>, 132 S. Ct. 1201 (2012).

---

[4] The court also notes that the defendants argue that an equitable estoppel theory, which allows nonsignatories to contracts to compel arbitration, applies here.  However, the court need not resort to equity because the contract language itself specifies that the third party claims may be directed to arbitration, and the contract may be enforced by a party to the contract.

Under West Virginia law, a contract term must be both procedurally and substantively unconscionable for a court to refuse to enforce it.  State Ex rel. Richmond Am. Homes of W. Va., Inc v. Sanders, 717 S.E.2d 909, 920, 228 W. Va. 125, 136 (2011).  "However,  both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa."  Brown v. Genesis Healthcare Corp. (Brown II), 729 S.E.2d 217, 221, 229 W. Va. 382, 386 (2012) (quoting Syl. pt. 20, Brown I, 724 S.E.2d at 262, 228 W.Va. at 658).

"Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract.  Procedural unconscion-ability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction."  Syl. Pt. 10, Brown II, 729 S.E.2d 217, 221, 229 W. Va. 382, 386 (2012).  "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the

disadvantaged party."  Syl. Pt. 19, <u>Brown I</u>, 724 S.E.2d at 262, 228 W. Va. at 658.  "[T]he paramount consideration is mutuality," where there must be "at least a 'modicum of bilaterality' to avoid unconscionability."  <u>Id.</u>

The Browns give three reasons as to why the Arbitration Agreement is unconscionable: (1) the discovery permitted in this arbitration is not as extensive as discovery provided for by the Federal Rules of Civil Procedure, (2) the Arbitration Agreement designates the AAA to conduct the arbitration, and (3) the Arbitration Agreement lacks mutuality because only the Browns are required to submit to arbitration. They also note, without separately identifying them as arguments of unconscionability, that the Arbitration Agreement was a contract of adhesion, that they had no knowledge of the Arbitration Agreement, that the meaning of arbitration was not explained to them, and that their first opportunity to review and sign the Finance Agreement was after the home had already been ordered and while it was being contemporaneously delivered.

1. Procedural Unconscionability

The court first notes that plaintiffs misidentify some of their arguments as arguments of procedural unconscionability. The plaintiffs state that the Arbitration Agreement is procedurally unconscionable because it limits discovery and

because it provides that arbitration will be conducted by an arbitrator from the AAA. But, as noted, procedural unconscionability concerns not the procedure of arbitration defined by an arbitration agreement, but the process surrounding the formation of the contract. Accordingly, the court will consider these arguments when it addresses substantive unconscionability below.

The plaintiffs do raise, however, that they did not know about the Arbitration Agreement when they signed the Finance Agreement, that they signed a contract of adhesion, that arbitration was not explained to them, that they did not sign the Finance Agreement until the time that the home was being contemporaneously delivered, and that they were not given a copy of the Finance Agreement after signing it. These constitute arguments about procedural unconscionability.

Generally, procedural unconscionability turns on "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syl. pt. 10, Brown II 729 S.E.2d at 221, 229 W. Va. at 386.

Although the Browns argue that the Finance Agreement was a contract of adhesion, more is required for a finding of procedural unconscionability.  State ex rel. Dunlap v. Berger, 567 S.E.2d 265, 274-75, 211 W. Va. 549, 557-58 (2002) (citing Am. Food Mgmt., Inc. v. Henderson, 434 N.E.2d 59, 62-63, 105 Ill. App. 3d 141, 145 (Ill. App. Ct. 1982) ("[f]inding that there is an adhesion contract is the beginning point for analysis, not the end").  But the Browns offer no more, as their other arguments for procedural unconscionability -- which mostly concern whether they were given the opportunity to understand the Arbitration Agreement -- are without merit.

The arbitration language appears plainly in the Finance Agreement.  Finance Agreement 8-9.  The Browns do not claim that, when signing the contract, anyone prohibited them from reading the terms of the contract.  The Browns are thus presumed to have read the terms of the contract and will be bound by them, even if they did not actually take the time to do so.  New v. Gamestop, Inc., 753 S.E.2d 62, 76, 232 W. Va. 564 (2013); State ex rel. Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808, 820, 229 W. Va. 486, 498 (2012) ("we see nothing in the record to indicate that the contract was formed in a manner or setting that prevented [the plaintiff] from having a reasonable opportunity to understand the terms of the

arbitration clause."); <u>Miller v. Equifirst Corp. of WV</u>, Civ. Action No. 2:00-0335, 2006 WL 2571634, at *10 (S.D. W. Va. Sept. 5, 2006)(Copenhaver, J.) ("Plaintiffs have failed to identify any conduct on the part of the closing agent . . . that prevented them from reading and reviewing the . . . Arbitration Riders."). Their claim that they were not told about the Arbitration Agreement is defeated because there is ordinarily no duty for the party with greater bargaining power to explain the terms of the contract to the party with lesser bargaining power. <u>Adkins v. Labor Ready</u>, 185 F. Supp. 2d 628, 637-38 (S.D. W.Va. 2001). Moreover, the Arbitration Agreement itself described arbitration in plain English:

> Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An Arbitrator will decide the case by issuing a written decision called an "award." Once confirmed, an award may be enforced as a court judgment in accordance with federal or state law. The circumstances under which a court can review an award are more limited in Arbitration.

Finance Agreement 8. The Agreement also warned the Browns that:

> IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS ARBITRATION AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS CONTRACT.

Finance Agreement 9. Similarly, their claim that they were not

given a copy of the Finance Agreement after signing does not indicate that the agreement was procedurally unconscionable, inasmuch as the contract was already formed at that point. "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." <u>Brown II</u>, 729 S.E.2d at 227, 229 W.Va. at 393 (quoting Syl. pt. 17, <u>Brown I</u>, 724 S.E.2d. at 261, 228 W.Va. at 657). After signing, the "bargaining process and formation of the contract" were over. The Browns also argue that they did not have time to review the contract because the home was being contemporaneously delivered to their plot while they were signing the documents at a public library. The plaintiffs fail to explain how concurrent delivery of the home prevented them from reading the arbitration provision and rejecting the delivery if they chose to do so.

2. Substantive Unconscionability

a. Discovery

The Browns argue that the discovery limitations contained in the Arbitration Agreement make it unconscionable. The plaintiffs wish to have the formal discovery processes afforded to them by the Federal Rules of Civil Procedure rather

than the discovery allowed by the Arbitration Agreement.  The
Agreement provides that:

> After the Arbitrator is selected, the Arbitrator, in
> accordance with the Arbitration Rules [of the AAA], will
> set a reasonable schedule, in light of the nature and
> complexity of the Claims, for the Arbitration and
> discovery, including any depositions, the exchange of
> written documents, the final deadline for discovery prior
> to the Arbitration, and other discovery matters addressed
> in the Arbitration Rules [of the AAA].

Finance Agreement 8.  The Browns claim that this is
unconscionable because "[c]onsumer cases tend to be fact-
intensive, requiring extensive deposition and document
production in order to show, inter alia, pattern and practice to
support fraud and/or unfair and deceptive practices claims."
Resp. 11.

        The informal discovery afforded in arbitration is one
of the reasons that parties seek to arbitrate in the first
place.  "Limited discovery rights are the hallmark of
arbitration . . . . The fact that an arbitration may limit a
party's discovery rights is not 'substantive unconscionability.'
If it were, every arbitration clause would be subject to an
unconscionability challenge on that ground."  State ex rel.
Ocwen Loan Servicing, L.L.C. v. Webster, 752 S.E.2d 372, 398,
232 W. Va. 341, 367 (2013) (quoting Coast Plaza Doctors Hosp. v.
Blue Cross of Cal., 83 Cal. App. 4th 677, 689-90, 99 Cal. Rptr.
2d 809, 818-19 (Cal Ct. App. 2000)).  The court also notes that

while the plaintiffs complain that depositions will not occur in arbitration, the arbitration provision expressly provides for depositions.  Finally, the discovery limitations apply equally to plaintiffs and defendants.  The informal discovery in arbitration does not make the Arbitration Agreement unconscionable.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991).


b.  Arbitration Conducted Through the AAA


        The Browns assert that the Arbitration Agreement is unconscionable because it designates that arbitration shall be conducted through the AAA.  The Agreement specifies that:  "The Arbitration shall be governed by and conducted under  . . . the arbitration rules of the American Arbitration Association ("AAA") . . . and . . . this Arbitration Agreement."  Finance Agreement 8.  The plaintiffs contend that the AAA is biased in favor of defendants because the AAA has an incentive to compete with other arbitration providers for designation in form contracts and, in order to obtain and keep an entity's arbitration business, AAA arbitrators are less apt to give favorable awards to consumers; the AAA's arbitrators are allegedly predominately corporate defense attorneys, and the AAA is allegedly paid on a fee-per-case basis for each arbitration,

thereby providing a further incentive to favor the entity that ensures their use and employment by writing them into the form contract of adhesion.

In support, the plaintiffs cite Dunlap, 567 S.E.2d at 280 n.12, 211 W. Va. at 564 n.12, and a summary affirmance in Toppings v. Meritech Mort. Servs., 569 S.E.2d 149, 149, 212 W. Va. 73, 73 (2002) (per curiam). In particular, the Browns cite the following dictum from a footnote of Dunlap:

> We also observe that neutrality in the selection and composition of any forum or tribunal is essential to the legal validity of contractual provisions providing for dispute resolution mechanisms, particularly when such provisions are placed in contracts of adhesion like the one signed [here]. A functional analysis of the West Virginia cases which do not favor arbitration demonstrates that this Court would not countenance an arbitration provision by which the parties agree that all disputes will be arbitrated by a panel chosen exclusively by one of the parties. The right to appoint one's own arbitrator is the essence of tripartite arbitration. We have held that an impermissible structural unfairness in a tribunal, be it judicial or arbitral, would be presumed where the decision-maker is designated by one of the parties to a dispute and where the person making the decisions is compensated on a fee-per-case basis. Consideration of this neutrality principle has been recognized by courts addressing the enforceability of an arbitration requirement.

Dunlap, 211 W. Va. at 564 n.12, 567 S.E.2d at 280 n.12 (2002) (internal citations and quotation marks omitted). The plaintiffs similarly rely on Toppings, which concludes, based on the Dunlap footnote alone, that the following certified question be answered in the affirmative:

> Whether a lender's form compulsory arbitration clause or
> rider, which mandates that all disputes arising out of a
> consumer transaction be submitted to a lender-designated
> decision maker compensated through a case-volume fee system
> whereby the decision maker's income as an arbitrator is
> dependent on continued referrals from the creditor, so
> impinges on neutrality and fundamental fairness that it is
> unconscionable and unenforceable under West Virginia law.

Toppings, 569 S.E.2d at 149, 212 W. Va. at 73.

The plaintiffs' argument fails because decisions by the West Virginia Supreme Court of Appeals do not abrogate the authority of the United States Supreme Court on matters of arbitration inasmuch as the FAA preempts state law in these areas. "West Virginia precedent generally barring state claims from arbitration must be necessarily circumscribed . . . . To the extent that Dunlap intends to fashion a broad prohibition against the arbitrability of state-law claims, such a ruling, whether dicta or otherwise, cannot contravene the FAA." Wood, 429 F.3d at 90. See also Marmet, 132 S.Ct. at 1202; Miller, 2006 WL 2571634, at * 14. "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'" AT&T Mobility, LLC v. Concepcion, 131 S.Ct. 1740, 1747 (2011) (quoting Perry v. Thomas, 482 U.S. 483, 493 n.9 (1987)).

The United States Supreme Court has more than once stated "[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." Gilmer 500 U.S. at 30 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 634 (1985)). In addition, the court finds that the Consumer Arbitration Rules of the AAA, which appear to apply in this instance, allow the parties to agree to a process for appointing an arbitrator. American Arbitration Association, Consumer Arbitration Rules, R-16(a) (effective Sept. 1, 2014). If the parties cannot agree, the AAA will appoint an arbitrator from its rolls, but the rules afford the plaintiff an opportunity to object to that arbitrator and obtain review before the AAA of that arbitrator's partiality. Id. R-19(b). And, the rules require the arbitrator to disclose possible conflicts of interest. Id. R-18. The court also notes that under these rules, if the arbitrator holds hearings -- which the plaintiffs may request -- the arbitrator is paid for the time spent on the case rather than a flat fee for the case. Id. at R-29, p. 34. Provisions similar to these have been ruled permissible. See Gilmer, 500 U.S. at 30 (arbitration rules that, among other things, allowed challenges of the arbitrator's neutrality, for cause, and required disclosure of conflicts); Miller, 2006 WL

2571634, at * 14 (National Arbitration Forum Rules).  While the court appreciates the healthy skepticism articulated by the plaintiffs, the court concludes that, under the binding authority cited, the Arbitration Agreement is not rendered unconscionable simply because the AAA and its arbitration rules apply in this setting.[5]


c. Mutuality

        The Browns contend that the Arbitration Agreement is not mutual, because it requires the Browns to submit their claims to arbitration, but allows the

> Seller [to] use judicial process (filing a lawsuit): (a) to enforce the security interest granted in this Contract or any related mortgage or deed of trust, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Manufactured Home or other Collateral.

Finance Agreement 9.  The plaintiffs cite Noohi v. Toll Brothers, 708 F.3d 599, 610 (4th Cir. 2010), a case in which the court determined that the arbitration agreement bound only the plaintiffs to arbitration, and thus lacked mutuality of

---

[5] The plaintiffs also briefly argue that the Arbitration Agreement is unconscionable because it does not allow for the consumer to opt out of the arbitration agreement.  However, the basis for the plaintiffs' claim is that there are cases finding an arbitration agreement with an opt-out clause not unconscionable.  The plaintiff does not cite any cases where an Arbitration Agreement was unconscionable because there was no opt-out provision.

consideration.  The court found that the arbitration provision
lacked mutuality because it had the effect of only binding the
buyer to submit his claims to arbitration, while the seller was
able to file all its claims in court.  Id. at 610-11.  In
contrast, the provision in this case excludes from arbitration
only certain identified claims brought by the Seller that relate
to recovery of the collateral.  More important, as the
defendants have pointed out, the West Virginia Supreme Court of
Appeals has already determined that an arbitration agreement
that excludes only those claims by which the holder of a
security interest in property attempts to recover it does not
lack mutuality.  Webster, 752 S.E.2d at 396, 232 W. Va. at 365
(quoting Miller, 2006 WL 2571634 at *11 ("The exception for
proceedings related to foreclosure is one that is not only
common in arbitration agreements but quite necessary in order to
effectuate foreclosure and a retaking of the subject property by
lawful processes, where needed, without breach of the peace.").
Accordingly, the court finds that the contract is not
unconscionable for a lack of mutuality.


3. Jury Trial Waiver

        Apart from their unconscionability arguments, the
Browns contend that the Arbitration Agreement is unenforceable
because they did not knowingly and intelligently waive their

25

right to a jury trial.  This argument is without merit inasmuch as "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."  Wood, 429 F.3d at 91 n.6 (quoting Snowden v. CheckPoing Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002)).[6]


                              IV.


        The court concludes that the Arbitration Agreement contained in the Finance Agreement is enforceable.

        It is ORDERED that the plaintiffs submit this case to arbitration in accordance with the terms of the Finance Agreement.  It is further ORDERED that this action be, and hereby is, stayed and retired to the inactive docket pending the arbitral decision or abandonment of that forum and this action, whichever first occurs.  Counsel are directed to file joint status reports quarterly beginning October 1, 2014, respecting progress on the matter.

_____

[6] The plaintiffs briefly argue that the contract is also unenforceable because it contains a promise by the buyers to pursue claims individually rather than as a class.  It is plain that such clauses do not render Arbitration Agreements unenforceable.  American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2310-11 (2013); Webster, 232 W. Va. at 390.

The Clerk is requested to transmit this written opinion and order to counsel of record and any unrepresented parties.

ENTER: August 29, 2014

John T. Copenhaver, Jr.
United States District Judge